# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| JEANETTE H. WISEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:14 C 01911 |
| v. | ) | Judge Marvin E. Aspen |
| | ) | |
| THE CONVENTION CENTER | ) | |
| AUTHORITY OF THE METROPOLITAN | ) | |
| GOVERNMENT OF NASHVILLE AND | ) | |
| DAVIDSON COUNTY, *also known as* | ) | |
| Music City Center, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Jeanette Wiseman filed this lawsuit against her former employer, the Convention Center Authority of the Metropolitan Government of Nashville and Davidson County ("Defendant"). In her complaint, Wiseman alleges that Defendant discriminated and retaliated against her on the basis of her age, sex, and disability. Presently before us is Defendant's motion for summary judgment. (Dkt. No. 19.) For the reasons set forth below, we hereby grant Defendant's motion.

## FACTUAL BACKGROUND[1]

Defendant operates two convention centers in downtown Nashville: (1) the older, smaller Nashville Convention Center ("NCC"); and (2) the newer and significantly larger Music City Center ("MCC"). (SUMF ¶¶ 1–2.) In March of 2013, Wiseman applied for a position as a

---

[1] Unless otherwise noted, the facts described herein are undisputed and culled from Defendant's Local Rule 56.01(b) statement of facts and exhibits. Wiseman declined to offer additional statements of fact in support of her opposition to the pending motion, as permitted by Local Rule 56.01(c). Nonetheless, we will consider any material facts included in her brief where supported by record citations.

security officer for Defendant. (*Id.* ¶ 4.) Erin Hampton, Richard Wagner, and Elisa Putman interviewed Wiseman at a job fair, at which time Wiseman indicated that she was available to work any schedule as needed by Defendant. (*Id.* ¶¶ 4–5.) Shortly thereafter, effective April 1, 2013, Defendant hired Wiseman as a Security and Parking Officer to work at the NCC and MCC (once it opened). (*Id.* ¶ 6.) At the time she was hired, Wiseman was 59 years old. (*Id.* ¶ 51.)

### A.     Wiseman's Job Duties

During her employment with Defendant, Wiseman was supervised by Nicholas Fleming, Security and Parking Manager, and Richard Wagner, Director of Security and Parking. (*Id.* ¶ 13.) Typically Wiseman worked the third shift, from 11 p.m. to 7 a.m., but she occasionally worked the second shift. (*Id.* ¶¶ 20–21.) The job duties for the shifts are essentially identical, although the third shift has less activity. (*Id.* ¶ 61.) She worked shifts at both the NCC and MCC throughout her tenure with Defendant. (*Id.* ¶¶ 14, 16, 22, 77.)

The job description for the Security and Parking Officer position states that the job's two primary duties are "loss prevention" and "ensuring safety [and] security of all patrons and staff." (*Id.* ¶ 8; *see also* 10/30/15 Decl. of Erin Hampton ¶ 7 & Ex. A (Job Description).) The description also indicates that the position requires "typically standing or walking" as well as "intermittently sitting/standing/walking." (SUMF ¶ 8; Job Description (summarizing the physical effort needed for the position).)

In her deposition, Wiseman described her primary duties at the NCC as: "roving the building, monitoring established checkpoints, checking exterior doors to ensure they were secure, watching for transient persons or others who did not belong in the building, checking contract employees in and out of the building, unlocking building doors as needed, and

monitoring the unloading and loading of vendors." (SUMF ¶ 15; Wiseman Dep. at 40–42.)

Wiseman similarly testified as to her duties when working at the MCC, where she had: "to rove

the entire facility, both exterior and interior, lock meeting rooms and ensure they were clear,

watch surveillance camera monitors, and check employees, vendors, and contractors in and out

of the building." (SUMF ¶ 17; Wiseman Dep. at 43–44.) She stated that the "roving" duty

required Security and Parking Officers to traverse the entirety of the two facilities, inside and

out.[2] (SUMF ¶ 18.) Wiseman also testified that she had to walk stairs during each shift.

(*Id.* ¶ 19.)

Wiseman's testimony as to her job responsibilities is consistent with the MCC operating

procedures submitted by Defendant. (*See* SUMF ¶¶ 10–12.) The MCC operating procedures

manuals describe the security officers' duties for conducting inside rounds, outside rounds, and

perimeter security. (*Id.*) Specific duties include reporting crowd flow or housekeeping

problems, ensuring that unused areas are locked, and checking "all stairwells and service

corridors." (*Id.* ¶ 10.) Additional tasks include, *inter alia*, stopping and pulling on exterior

doors, remaining alert to any hazards to the public, and monitoring landscaping, as well as

checking emergency exits, storage and mechanical rooms, janitorial closets, and other spaces.

(*Id.* ¶¶ 11–12.)

### B.     Wiseman's Medical Conditions and Related Restrictions

Shortly after she began working for Defendant on April 1, 2013, Wiseman began seeking

medical treatment for certain medical conditions. (*Id.* ¶¶ 6, 9, 24–25.) On April 18, 2013,

Wiseman visited the Faith Family Medical Clinic ("Clinic") and asked the staff to send a letter to

---

[2] The parties dispute whether Wiseman was "required to walk" while roving. (Resp. to
SUMF ¶ 18.) It is undisputed that security officers typically walked while roving, which
Wiseman asserts she was forced to do despite her conditions and despite the fact that a similarly-
situated male employee was permitted to use a "Gator" (a motorized utility vehicle) as an
accommodation. (*See id.*)

Defendant requesting a modified workload. (*Id.* ¶ 24.) Clinic staff then emailed a letter, dated

April 19, 2013, to Fleming, informing Defendant that Wiseman had been diagnosed with arthritis

in both knees. The letter also stated that Wiseman should be "restricted to light duty while at

work, specifically limiting stair climbing and long periods of walking until further notice." (*Id.*

¶¶ 24–26; 4/19/13 Carolyn Pratt Ltr. to Fleming (Dkt. No. 23-8).) In response, on

April 30, 2013, Hampton wrote the Clinic for clarification about Wiseman's restrictions.

(SUMF ¶ 27; 4/30/13 Hampton Ltr. to Clinic (Dkt. No. 23-9).)

 On May 3, 2013, Fleming and Wagner met with Wiseman to discuss the Clinic's April 19

letter and her requested accommodations. (SUMF ¶ 28.) In the meeting, Wiseman

acknowledged that she had been avoiding using the stairs while making her rounds at the MCC

and would prefer to use the elevators as an accommodation. (*Id.* ¶¶ 28–29; *see* 5/3/13 Wagner

Email to Hampton (summarizing meeting with Wiseman) (Dkt. No. 23-10).) According to

Wagner's summary of the meeting, Wiseman agreed that a security officer at the MCC would be

required—as an essential job function—to perform walkthroughs of the garage and stairwells.[3]

(SUMF ¶ 30; 5/3/13 Wagner Email to Hampton.)

 On May 16, 2013, the Clinic responded to Hampton's April 30 request for additional

information about Wiseman's restrictions. (SUMF ¶ 31; 5/16/13 Pratt Fax to Hampton

(Dkt. No. 23-11).) The Clinic informed Hampton that Wiseman should have "limited stair

climbing" for one month. (SUMF ¶ 31; 5/16/13 Pratt Fax to Hampton.)

 Several weeks later, Wiseman saw Dr. Henderson at the Clinic and was diagnosed with

plantar fasciitis. (SUMF ¶ 32.) Dr. Henderson prescribed some medication, offered guidance,

---

[3] Wiseman denies agreeing that she personally would be required to conduct the walkthroughs.
(Resp. to SUMF ¶ 30.) In her deposition, Wiseman testified that, at the meeting with Wagner,
she agreed that "it should be checked, not that I should check it." (*Id.*; *see also* Wiseman
Dep. at 142.) It is undisputed that a security officer, whether Wiseman or another, would need to
complete these tasks during each shift. (Resp. to SUMF ¶ 30; Wiseman Dep. at 30.)

and told Wiseman to take the night off work, but he did not suggest any work restrictions as a result of his diagnosis.[4]  (*Id.*; *see* 6/13/13 Henderson Quick Note (Dkt. No. 23-12).)

As of June 16, 2013, Wiseman's one-month light-duty period expired.  Wagner asked Wiseman about the status of her restrictions, and she stated that she would follow up with the Clinic about her condition.  (SUMF ¶ 33; Wiseman Dep. at 151–52.)  Having not heard from Wiseman, Defendant contacted the Clinic by letter dated July 1, 2013 to inquire whether Wiseman's restrictions continued.  (SUMF ¶¶ 34–35; *see* 7/1/13 Hampton Ltr. to Pratt (Dkt. No. 23-13).)  In response, on July 3, 2013, the Clinic extended Wiseman's light-duty restriction for an additional six weeks, until Wiseman could consult an orthopedic specialist.  (SUMF ¶ 36; *see* 7/3/13 Davis Ltr. to Wiseman (Dkt. No. 23-14).)

Soon thereafter, Wiseman met with Hampton, Wagner, and Putman to discuss the extended restrictions.  (SUMF ¶ 37.)  Defendant then issued a letter, dated July 19, 2013, which reiterated that one of her job duties is "the observation and documentation of all areas of the exterior and interior of the facility including stairwells."  (SUMF ¶ 38; 7/19/13 Ltr. to Wiseman (Dkt. No. 23-15).)  In the letter, Defendant offered three accommodations to meet Wiseman's limitations, including: (1) reduction in the amount of walking and checking of stairs during the initial four-hour roving period; (2) use of the Segway and/or Mule, as well as any necessary training on use of the Segway; and (3) assistance finding the most efficient route for rounds to reduce the total time spent walking and climbing.  (SUMF ¶ 38; 7/19/13 Ltr. to Wiseman.)  Wiseman and Wagner signed the letter on July 25, 2013.  (SUMF ¶ 39.)

---

[4] In her response, Wiseman implies that only part of the relevant statement of fact is undisputed.  (Resp. to SUMF ¶ 32.)  But she has not properly disputed any portion of the statement and therefore has admitted it in its entirety.  M.D. Tenn. L.R. 56.01(c) ("Each disputed fact must be supported by specific citation to the record.").

Wisemen saw Dr. Johnson, an orthopedic specialist, on July 24, 2013, and he found that she was still suffering from plantar fasciitis.  (*Id.* ¶ 40; Wiseman Dep. at 173–74.)  He kept her off work that day but did not impose any work restrictions.  (SUMF ¶ 40; Wiseman Dep. at 173–74; 7/24/13 Johnson Note (Dkt. No. 23-16).)  After this appointment, Wiseman changed providers and began seeing Dr. Embree, a podiatrist, and then went to Roberson County Spine & Injury Center ("RCSIC").  (SUMF ¶ 41; Wiseman Dep. at 174.)

By August 30, 2013, Wiseman's extended period of light-duty restriction had expired, an issue that Wagner raised with her.  (SUMF ¶ 42.)  Wiseman advised Wagner that she was meeting with a new medical provider.  (*Id.* ¶ 43; *see* 8/30/13 Wagner Email to Hampton (Dkt. No. 23-17).)  That same day, Dr. Jackson with RCSIC placed Wiseman on light duty through October 1, 2013.  (SUMF ¶ 44.)  He specifically noted that Wiseman should, if possible, receive Segway training, take adequate rest breaks, and limit her use of stairs.  (*Id.*; *see* 8/30/13 Jackson Work Excuse/Return to Work Limitations (Dkt. No. 23-18).)

C.      **Wiseman's Termination and Subsequent Medical Progress**

On September 9, 2013, during a meeting with Wagner and Hampton, Defendant terminated Wiseman's employment.  (SUMF ¶ 47; *see* 9/9/13 Hampton Ltr. to Wiseman (Dkt. No. 23-6).)  Defendant informed Wiseman that she was being fired "due to continued issues with inability to perform the essential functions of the Security and Parking Officer [] position without accommodation."  (9/9/13 Hampton Ltr. to Wiseman; *see also* Hampton Decl. ¶ 14 (explaining Defendant's rationale).)  Wiseman also met the following day with Charles Starks, the President and CEO of the MCC.  (SUMF ¶ 48.)  He reiterated that Wiseman had been dismissed because she could not meet her job requirements.  (*Id.*; Wiseman Dep. at 83, 85.)

Wiseman concedes that she could not perform her roving duties on foot, nor could she perform her stair climbing duties without a reduction in the amount thereof. (SUMF ¶ 49.) She requested to limit the amount of stair climbing and to limit the amount of walking without breaks. (*Id.* ¶ 50.) Wiseman does not dispute that eliminating, or substantially limiting, her essential job duties would mean that other security officers would need to "take on the burden of performing those essential functions for her." (*Id.* ¶ 46.)

Following her termination, Wiseman's plantar fasciitis healed because she was no longer required to walk extensively. (SUMF ¶¶ 97–98; Wiseman Dep. at 116–20.) In addition, her knees no longer bother her. (SUMF ¶ 99; Wiseman Dep. at 118.) At the time of her deposition, Wiseman held another security officer position that did not require as much walking as her employment with Defendant. (SUMF ¶ 100; Wiseman Dep. at 119.) She testified that she likely would again experience difficulty with her knees, because of the arthritis, if she held a job that required significant amounts of walking or stair climbing. (SUMF ¶ 101; Wiseman Dep. at 119 (explaining that the amount of walking required in security positions varies by location in its intensity).) Wiseman does not dispute that she has walked a half-5k race and continues to train for such races. (SUMF ¶ 102; Wiseman Dep. at 13.)

## STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); *see also DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004) (describing the issue as "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that on party must prevail as a matter of law") (internal quotation omitted). This standard places the initial burden on the moving party to identify those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving party "must go beyond the pleadings" and identify portions of the record demonstrating that a material fact is genuinely disputed. *Id.*; Fed. R. Civ. P. 56(c). The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Amini v. Oberlin Coll.*, 440 F.3d 350, 357 (6th Cir. 2006) (internal quotation omitted). In deciding whether summary judgment is appropriate, however, we must accept the nonmoving party's evidence as true, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513; *see Clayton v. Meijer, Inc.*, 281 F.3d 605, 609 (6th Cir. 2010).

## ANALYSIS

In her complaint, Wiseman alleges that Defendant discriminated against her in several ways, including terminating her employment, because of her age, gender, disability and/or perceived disability. She also contends that Defendant retaliated against her because of her workplace complaints and requests for accommodation. (*See* Compl. ¶¶ 19–28.) We address each claim in turn below.

### A.    Wiseman's Age Discrimination Claims

The ADEA prohibits an employer from discriminating against an employee "because of such's individual's age." 29 U.S.C. § 623(a); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175–77, 129 S. Ct. 2343, 2350–51 (2009). Wiseman's burden under the ADEA is to prove that "age was the 'but-for' cause of [Defendant's] adverse action" against her. *Gross*, 557 U.S. at 177,

129 S. Ct. at 2351. Wiseman proceeds with her disparate treatment claim for age discrimination using the indirect method of proof, as articulated first in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). (Opp'n at 15.)

Under the indirect method, the plaintiff must establish a prima facie case of discrimination, which requires proof that: (1) she is a member of a protected class; (2) her job performance met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) at least one similarly-situated employee not in her protected class was treated more favorably. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S. Ct. at 1824; *Geiger v. Tower Auto.*, 579 F.3d 614, 622–23 (6th Cir. 2009); *DiCarlo*, 358 F.3d at 414–15 (noting that the burden-shifting *McDonnell Douglas* framework applies equally to ADEA claims); *see Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007). If the elements are established, discrimination is inferred and the burden of production shifts to the defendant to raise a legitimate, nondiscriminatory reason for the adverse action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S. Ct. 1089, 1093 (1981); *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S. Ct. at 1824; *DiCarlo*, 358 F.3d at 414–15; *Tuttle*, 474 F.3d at 317. Once a legitimate reason is offered, the inference of discrimination disappears, and the plaintiff must establish that the offered reason is a pretext for unlawful discrimination. *Burdine*, 450 U.S. at 253, 101 S. Ct. at 1093; *DiCarlo*, 358 F.3d at 414–15; *Tuttle*, 474 F.3d at 317; *see Reed v. Am. Cellular, Inc.*, 39 F. Supp. 3d 951, 964–66 (M.D. Tenn. 2014).

Wiseman articulates two ADEA claims. She contends that she was fired because of her age and also that younger employees were given preferential shifts. We address each claim briefly below. We bear in mind that there is no question that Wiseman satisfies the first element of her prima facie case under either theory, as she falls within the class of individuals (workers

over forty) who are protected by the ADEA.  We further assume—for purposes of this analysis only—that Wiseman was meeting her employer's legitimate expectations.

### 1.      Preferential Shifts

Although not specified in detail in the complaint, or addressed in her response to the pending motion, Wiseman claimed in her deposition that Defendant assigned her less preferential shifts that her younger colleagues.  (SUMF ¶ 52; Wiseman Dep. at 89.)  This claim fails for two reasons.

First, Wiseman has not shown that she suffered any adverse employment action with respect to her work schedule.  Generally, adverse actions involve "a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."  *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999); *Temper v. Potter*, 505 F.3d 508, 516–17 (6th Cir. 2007).  As mentioned earlier, Wiseman primarily worked the third shift, from 11 p.m. to 7 a.m.  It appears that Wiseman deems the third shift as "worse" than other shifts, and she suggests that her regular assignment to that shift constitutes an adverse employment action under the ADEA.  Wiseman has noticeably failed to articulate, however, *why* the third shift should be deemed less desirable, let alone an actionable adverse action.  The record does not show, for example, that the third shift involved lower wages, a different title, lesser benefits or opportunities for advancement, or materially reduced responsibilities.  (Arguably, the third shift could be considered more desirable in that there is less activity.)  Wiseman's uncorroborated, subjective belief that the third shift is less preferable is simply insufficient to satisfy this element of the prima facie case.  *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 183 (6th Cir. 2004) ("[A] plaintiff's subjective impression concerning the desirability of one position over another

generally does not control with respect to existence of an adverse employment action.");

*Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002).

Second, Wiseman cannot prevail on this claim because she has not identified any younger similarly-situated employees who Defendant treated better than her. Indeed, the undisputed evidence before us shows that Wiseman typically worked the third shift with a younger male named Codey Franklin. (SUMF ¶¶ 54–55.) Wiseman believed that Franklin was in his thirties; he was twenty-seven when they worked together. (*Id.*) The third security officer who worked this shift with Wiseman and Franklin was either Sharesse Mayo, aged twenty at the time, or Cedric Armour, who was forty-one (and more than fifteen years younger than Wiseman). (*Id.* ¶¶ 54, 56–57.) It is further undisputed that three security officers who were either roughly the same age or older than Wiseman worked the first or second shifts. (*Id.* ¶¶ 58–60.) The undisputed evidence thus does not support Wiseman's theory.

In her deposition, Wiseman pointed to William Boza as a comparator for this claim. Boza, approximately aged forty when hired in 2013, was appreciably younger than Wiseman and assigned to work second shift. (SUMF ¶¶ 62–64.) Defendant has presented evidence, however, that Boza and Wiseman are not similarly-situated. When he applied for the position, Boza specifically requested to work second shift due to his school schedule. Defendant hired him with this restriction and assigned him accordingly.[5] (*Id.*; *see also* Hampton Decl. ¶ 11.) On the other hand, Wiseman told Defendant during her interview that she was able and willing to work any shift as needed. (SUMF ¶ 5.) Because Boza and Wiseman were not hired with the same shift availability, they are not similarly-situated "in all relevant aspects" with respect to this work

---

[5] Although Wiseman attempts to contest these statements of fact, she has not disputed them. (Resp. to SUMF ¶¶ 63–64.) She has not identified any evidence in the record to rebut the evidence or demonstrate that it is disputed, as required by the local rule. M.D. Tenn. Local R. 56.01(c). As such, the facts are admitted.

scheduling claim. *See, e.g.*, *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir. 2008) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)) ("To satisfy the similarly-situated requirement, a plaintiff must demonstrate that the comparable employee is similar 'in all of the *relevant* aspects.'"); *Clayton*, 281 F.3d at 611.

Because Wiseman cannot satisfy the third and fourth elements of the prima facie case for this claim, Defendant is entitled to summary judgment thereon.

### 2.    Termination

We next consider Wiseman's ADEA termination claim. As above, we assume that Wiseman has satisfied the first and second elements of her prima facie case. Because Wiseman's termination, unlike her work schedule, plainly constitutes an adverse employment action, the third element is also met.

The claim nonetheless fails because Wiseman again cannot show that a similarly-situated, younger employee was treated more favorably under like circumstances. Indeed, she admits as much in her opposition brief. (Opp'n at 16 ("Plaintiff admits that she does have difficultly pointing to a comparator.").) Wiseman has not identified any similarly-situated employee for comparison purposes. Nor has she offered any evidence, whatsoever, from which a jury could reasonably infer that her age was the "but-for" cause of her termination. *Gross*, 557 U.S. at 177, 129 S. Ct. at 2351.

Wiseman testified that she believes her age was a factor, among others, (Wiseman Dep. at 94–95), but this testimony is neither legally nor factually sufficient for her to prevail on her termination claim. In *Lewis v. Humboldt Acquisition Corporation*, the Sixth Circuit explained that, following *Gross*, both the ADEA and ADA require a plaintiff to show "but-for" causation. 681 F.3d 312, 318 (6th Cir. 2012). That is, the statutes do not "allow a plaintiff to prove

discrimination merely by showing that her disability [or age] was a *motivating factor* behind her adverse employment action," as Wiseman contends here. *Id.*; *Reed*, 39 F. Supp. 3d at 960. (Wiseman Dep. at 94–95 (testifying that her age, disability, and gender were all "interconnected" factors, along with Defendant's retaliatory intent).) Moreover, it is well-settled that "conclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992); *Helfich v. Nw. Ohio Orthopedics & Sports Med., Inc.*, 570 F. App'x 585, 588 (6th Cir. 2014) ("Mere speculation will not do."); *Green v. Fidelity Investments*, 374 F. App'x 573, 577 (6th Cir. 2010) (plaintiff's circumstantial evidence, "consisting primarily of perceived social slights and his own subjective view . . . do not suggest that age was the 'but-for' cause of his termination"). Wiseman's personal suspicions about the reasons for Defendant's decision to terminate her are not enough to create a triable question of fact.

In short, no reasonable fact-finder could return a verdict for Wiseman on her age claims. Accordingly, her ADEA claims are dismissed.

### B.     Wiseman's Sex Discrimination Claims

In addition to her age claims, Wiseman brings sex discrimination claims under Title VII. "Title VII prohibits an employer's use of an employee's sex as a 'motivating factor' for an adverse employment action, even if other factors motivated the action." *DeNoma v. Hamilton Cty. Court of Common Pleas*, — F. App'x —, 2015 WL 5332486, at *3 (6th Cir. Sept. 14, 2015); *see* 42 U.S.C. § 2000e-2(a)(1), (m). Wiseman contends that she was terminated in violation of Title VII. She also alleges that she was denied use of motorized vehicles for roving, as opposed

to her male counterpart, and that Wagner treated female officers in a hostile and humiliating manner.[6] (Opp'n at 14–15.)

As with her age claims, Wiseman pursues her sex discrimination claims using the indirect method. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S. Ct. at 1824; *Gunn v. Senior Servs. of N. Ky.*, — F. App'x —, 2015 WL 7959689, at *3 (6th Cir. Dec. 7, 2015); *Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 955 (6th Cir. 2014). As before, we begin the familiar three-step analysis by evaluating whether she has established a prima facie case of sex discrimination, for each of her theories.[7] Wiseman obviously satisfies the first element of her prima facie case, and we will assume, for purposes of this analysis only, that she was meeting Defendant's legitimate employment expectations. We focus our inquiry on the third and fourth elements.

### 1.    Denial of Use of a Motorized Roving Vehicle

Wiseman advances three different theories for this claim, which we address briefly below.

---

[6] Although Wiseman initially claimed that her work assignments were discriminatory, she has not defended that claim in her opposition. She has neither supported this claim with any evidence, nor rebutted Defendant's evidence demonstrating that both men and women were assigned to the MCC and NCC. (SUMF ¶¶ 74–77.) Wiseman also has not articulated how the allegedly unfair assignments to the NCC could constitute an adverse employment action, as there is no evidence that shifts at the NCC were disadvantageous in any way. In light of Wiseman's failure to support this theory, and the undisputed evidence favoring Defendant, we grant the motion as to this claim.

[7] We add that Wiseman is not asserting a mixed-motive claim under Title VII. Although she contends that sex was a "motivating factor" for Defendant's decision—along with age, disability, and a retaliatory motive—she does not contend that sex was a motivating factor along with any *legitimate* reason. We therefore proceed under the usual *McDonnell-Douglas* analysis and not the modified approach applied to mixed-motive claims. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 396, 399–400 (6th Cir. 2008).

### a. Lack of Training and Fuel

Wiseman alleges that she regularly was denied use of a motorized roving vehicle (whether a Gator, Mule, or Segway), in part because: (1) she was not offered training on the vehicles; and/or (2) the vehicles had run out of fuel by the time her shift started.

As an initial matter, we question whether the unavailability of the motorized roving vehicle constitutes an adverse employment action. As mentioned earlier, adverse actions typically involve "a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Hollins*, 188 F.3d at 662; *Temper*, 505 F.3d at 516–17. As far as we can tell, Defendant's alleged constructive denial of the use of this equipment did not trigger any loss in pay, benefits, responsibilities, status, or the like. Nonetheless, we cannot rule out the possibility that this denial is a unique, but actionable, type of adverse action. We will draw this inference in Wiseman's favor. We therefore assume—for these two theories only—that Wiseman has satisfied the third element.

The fourth element, however, is Wiseman's undoing. While she asserts that she was denied use of the motorized vehicles due to insufficient training and lack of fuel, there is no evidence to suggest that similarly-situated, male employees received either better training or more fuel. She has not identified any male colleague who sought to use a vehicle and was provided fuel or training that she was not. (*See* Opp'n at 14.) To the extent that no fuel was available for the third shift, that circumstance affected Wiseman as well as her co-workers, who included at least one male at all times (Franklin and/or Armour). Wiseman has conceded as much. (*Id.* (stating that the fuel had run out or been hidden "from her and the rest of her third-shift co-workers"); *see also* Wiseman Dep. at 112 (Dkt. No. 29-1) (testifying that any of the

three third-shift workers, including Franklin or Armour, would have complained to Wagner about the lack of fuel).) There is simply no evidence from which a jury could find that Wiseman's sex played a role in Defendant's alleged failure to provide her with the use of vehicles due to lack of training or fuel. *See Cherry v. Unipres U.S.A., Inc.*, 04 C 36, 2006 WL 288645, at *6 (M.D. Tenn. Feb. 6, 2006) (transfer to the first shift was not materially adverse action and, moreover, "affected all employees on the third shift equally").

### b. Davis' Use of the Vehicle

In support of her sex discrimination claim, Wiseman also argues that she was denied access to a motorized vehicle because a male colleague, Rick Davis, was given preference in using it. (Opp'n at 14.) Davis monopolized the motorized vehicle during the shifts that Davis and Wiseman worked together. (SUMF ¶¶ 69–70, 73.) The evidence indicates that Davis hoarded the Gator, though there is no indication that Defendant knew about or sanctioned it. (*Id.* ¶¶ 71–72.) Nonetheless, Wiseman was forced to walk her rounds by foot on the three occasions she worked with Davis. (*Id.* ¶¶ 70, 73.)

As Wiseman acknowledges, (Opp'n at 14), the denial of a vehicle on three occasions over a two-week period, due to Davis' use, is not necessarily an adverse action. To support a discrimination claim, "a 'materially adverse' change in employment conditions 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities,'" from an objective point of view. *Mitchell*, 389 F.3d at 182 (quoting *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)); *Peake v. Brownlee*, 339 F. Supp. 2d 1008, 1021–22 (M.D. Tenn. 2003). "Employment actions that are de minimis are not actionable under Title VII." *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 795 (6th Cir. 2004); *Mitchell*, 389 F.3d at 182; *Peake*, 339 F. Supp. 2d at 1022. We conclude that the denial of the vehicle for the limited

duration of three shifts is de minimis.  *See, e.g.*, *Hykes v. Geithner*, 11 C 2720,

2014 WL 4656373, at *20 (W.D. Tenn. Sept. 15, 2014); *Blackburn v. Shelby Cty.*, 770

F. Supp. 2d 896, 920–21 (W.D. Tenn. 2011); *Arendale v. City of Memphis*, 05 C 2190,

2006 WL 3053402, at *9–10 (W.D. Tenn. Oct. 24, 2006).  The unavailability of the vehicle

represents a temporary inconvenience, with no material or lasting effects on Wiseman's terms

and conditions of employment.  As such, Wiseman has failed to establish her prima facie case

based on Davis' hoarding of vehicles.  Defendant is entitled to judgment on this claim.

>    **2.**    **Harassment by Wagner**

Wiseman next contends that she suffered discrimination at the hands of her supervisor,

Wagner, who was demeaning and hostile to women.  Although not clearly articulated by the

complaint, Wiseman thus appears to be asserting a hostile work environment claim.

"A work environment is actionable under Title VII if the workplace is permeated with

discriminatory intimidation, ridicule or insult sufficiently severe or pervasive to alter the

conditions of employment."  *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013)

(internal quotation omitted); *Mocic v. Sumner Cty. Emergency Med. Servs.*, 929 F. Supp. 2d 790,

798–99 (M.D. Tenn. 2013); *see Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370

(1993).  Among other things, a plaintiff pursuing such a claim must show that her employer's

conduct created an "objectively and subjectively hostile work environment."  *Mocic*,

929 F. Supp. 2d at 798; *McQuail v. Tenn. Tech. Univ.*, 69 F. Supp. 3d 701, 715–16 (M.D.

Tenn. 2014); *Arnold v. Reliant Bank*, 932 F. Supp. 2d 840, 853–55 (M.D. Tenn. 2013).  A

plaintiff also must demonstrate that "the harassment was based on sex."  *Waldo*, 726 F.3d at 813;

*McQuail*, 69 F. Supp. 3d at 716; *Arnold*, 932 F. Supp. 2d at 853–55.  We look to several factors

when assessing the hostility of the work environment, including: "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Waldo*, 726 F.3d at 813 (quoting *Harris*, 510 U.S. at 23, 114 S. Ct. at 371); *McQuail*, 69 F. Supp. 3d at 716; *Arnold*, 932 F. Supp. 2d at 853–54.

According to Wiseman, Wagner tended to "talk down" to female employees, humiliate them, and exhibit more yelling and unprofessional conduct toward them. (SUMF ¶¶ 78–79; Wiseman Dep. at 100–01, 103–04.) Wiseman also testified that she would be humiliated in front of other officers when Wagner would ask her questions (sometimes illogical questions) upon his arrival to work. (Wiseman Dep. at 101.) On one occasion, Wagner acted shocked that she provided the correct answer in response to his question. (*Id.*) Wiseman acknowledged in her deposition that she never heard Wagner make any derogatory comments about women. (*Id.* at 103; SUMF ¶¶ 82–83.) Wiseman relatedly testified that "the majority" of officers working for Wagner, including men and women, had gripes about Wagner and his treatment of them. (Wiseman Dep. at 201–02; SUMF ¶ 80; *see also* Resp. to SUMF ¶ 81 (admitting that she complained to Hampton that "every officer found Wagner to be intolerable").)

These undisputed facts do not support any conclusion or inference that Wiseman experienced an objectively hostile work environment. First, Wiseman has not shown that Wagner's harassment was based on her sex. Other than Wiseman's subjective perception, there is no evidence that Wagner's mistreatment of Wiseman or other female employees was related to their sex. To the contrary, the evidence—including Wiseman's own testimony—suggests that Wagner mistreated, and was disliked by, all of his employees regardless of gender. (Wiseman Dep. at 199–202; SUMF ¶ 80; *see also* Resp. to SUMF ¶ 81.) *See, e.g.*, *McQuail*, 69 F. Supp. 3d

at 716 (dismissing claim because plaintiff's entire department unfortunately shared in the "acrimony and internecine dispute among cliques" within the faculty).

Second, even assuming that sex-based harassment occurred, Wiseman has not demonstrated that it was "sufficiently severe or pervasive to alter the conditions of employment." *Waldo*, 726 F.3d at 813. Wagner did not engage in threatening or physical behavior and, based on the record before us, he did not make derogatory comments to or about women. Wiseman testified that Wagner debased female employees "often" but did not provide any details about his conduct or its frequency towards her. (Wiseman Dep. at 100.) Wiseman offered only one specific example of harassment, when Wagner appeared shocked that she could answer his question. This incident, while rude and offensive to Wiseman, falls well short of the "severe or pervasive" standard necessary to prevail on a hostile work environment claim. *See Arnold*, 932 F. Supp. 2d at 854 (noting that the conduct must be "extreme"). Considering the totality of the evidence before us, no reasonable jury could find that Wagner's behavior was so intimidating, hostile, or objectively offensive that it changed the terms and conditions of Wiseman's employment. *Waldo*, 726 F.3d at 814; *Arnold*, 932 F. Supp. 2d at 854; *Cook v. Life Credit Union*, 14 C 371, 2015 WL 5774585, at *11 (M.D. Tenn. Sept. 30, 2015) (dismissing claims based on harassing acts that were neither "in concert" nor so regular as to be deemed pervasive, as well as not being "inherently sexual in nature") (internal quotes omitted).

### 3. Termination

Finally, we briefly consider Wiseman's sex discrimination claim as based on her termination. Wiseman does not defend this claim in her opposition to the motion.

To withstand the motion, Wiseman would need to satisfy her prima facie case. Yet, on the evidence before us, Wiseman cannot show that a similarly-situated male employee was

treated better by Defendant, i.e., not fired under similar circumstances. She has not identified any comparators for this claim. Nor does she offer any other type of circumstantial evidence that could warrant an inference of sex discrimination. No reasonable jury could find that sex was a motivating factor in Defendant's decision to terminate Wiseman's employment. Accordingly, we grant the motion for summary judgment as to all of Wiseman's sex discrimination claims.

### C.     Wiseman's Disability Discrimination Claims

We turn next to evaluate Wiseman's disability discrimination claims. Wiseman contends that Defendant failed to reasonably accommodate her needs and unlawfully terminated her employment.

#### 1.     Scope of Wiseman's ADA Claims

Before turning to the motion, we resolve a threshold question. Defendant contends that Wiseman may argue only that she was "regarded as" disabled by Defendant but may not argue that she was in fact disabled.[8] Defendant asserts that Wiseman has waived the ability to claim an actual disability because she did not plead as much in her complaint and because she testified at her deposition that she does not believe she was disabled. (Mem. at 14; Reply at 6–7.) We disagree. While the complaint alleges that Defendant discriminated against and terminated Wiseman because of her "perceived disability," (Compl. ¶¶ 17–18), it further alleges that Defendant's conduct was "a result of [Wiseman's] disability or perceived disability," (*id.* ¶ 24). The complaint is not perfect, but it plainly put Defendant on notice of Wiseman's actual disability claim.

---

[8] The significance of this dispute is that employers are not obligated to provide reasonable accommodations for individuals who are "regarded as"—but who are not actually—disabled. *Baker v. Windsor Republic Doors*, 414 F. App'x 764, 774–76 (6th Cir. 2011); *Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999); *Cardenas-Meade v. Pfizer, Inc.*, 09 C 268, 2011 WL 6026893, at *8 (E.D. Tenn. Dec. 5, 2011).

Moreover, we do not construe Wiseman's deposition testimony as a binding concession that she has no impairment claim. (Wiseman Dep. at 114–15.) In the short exchange with counsel on this topic, Wiseman, a non-lawyer, was asked what she believed about whether she had a disability. (*Id.*) She testified that she did not believe she had a disability that could not have been accommodated. When pressed, she said "I don't believe I had a disability, per se." (*Id.* at 114.) Although she affirmed that she felt Defendant perceived her as having a disability, we do not think this exchange dooms her actual disability claim. As a practical matter, her testimony about her own beliefs, on this critical issue, does not carry the legal weight Defendant seeks to assign it. For example, if she had testified that she believed she *was* disabled, her testimony likewise would not be dispositive of the question. *See, e.g.*, *Mobley v. Miami Valley Hosp.*, 603 F. App'x 405, 410 n.3 (6th Cir. 2015) (declining to treat plaintiff's testimony that he was not disabled as a concession, in part because plaintiff, who suffered cognitive difficulties, "may not have been using the word 'disabled' in the technical legal sense of his examiner").

Perhaps most importantly, the Sixth Circuit has stated that, prior to trial, plaintiffs need not commit to one of three approaches permitted by the ADA. Plaintiffs may assert that they are disabled because they have "a physical or mental impairment," a "record of such an impairment," or are "being regarded as having such an impairment." 29 C.F.R. § 1630.2(g); *see* 42 U.S.C. 12102(1). The Sixth Circuit has explained that "[t]he plaintiff can proceed to trial without deciding under which prong she is covered." *Workman*, 165 F.3d at 467; *Stroud v. Connor Concepts, Inc.*, 09 C 895, 2009 WL 4723693, at *9 (M.D. Tenn. Dec. 2, 2009); *see also Berry v. City of Savannah, Tenn.*, 173 F.3d 854, at *4 (6th Cir. 1999) (unpublished table decision). Consistent with this guidance, we reject Defendant's argument. We will address the motion as applicable to both of Wiseman's approaches.

## 2.	Merits of Wiseman's ADA Claims

The ADA "is intended to ensure that individuals living with disabilities are treated fairly and afforded equal opportunity, including within the workplace." *Evola v. City of Franklin, Tenn.*, 18 F. Supp. 3d 935, 944 (M.D. Tenn. 2014); *Coffman v. Robert J. Young Co., Inc.*, 871 F. Supp. 2d 703, 713 (M.D. Tenn. 2013); *see also* 42 U.S.C. § 12101 (presenting findings of fact and setting forth the ADA's purposes). The ADA therefore prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

When an ADA plaintiff pursues a claim using direct evidence—as Wiseman does here, (Opp'n at 8–9)—she bears the initial burden of showing that: (1) she is disabled (which, by definition, includes being "regarded as" disabled); and (2) "she is otherwise qualified for the position despite . . . her disability," either (a) without accommodation; "(b) with an alleged essential job requirement eliminated; or (c) with a proposed reasonable accommodation." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007) (internal quotation omitted); *Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 526–27 (6th Cir. 2015); *Rorrer v. City of Stow*, 743 F.3d 1025, 1038–39 (6th Cir. 2014); *Lovell v. Champion Car Wash, LLC*, 969 F. Supp. 2d 945, 950–51 (M.D. Tenn. 2013). In the next step of this framework, the employer bears the burden of demonstrating "that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer." *Kleiber*, 485 F.3d at 869; *Rorrer*, 743 F.3d at 1039; *Lovell*, 969 F. Supp. 2d at 951. With these principles in mind, we turn to Wiseman's claims.

### a.     Termination

Wiseman alleges that Defendant terminated her employment because she is disabled and/or because it perceived her as being disabled.  We address each theory below.

### 1.     Physical or Mental Impairment

Under this first approach, Wiseman must show that she had a "physical or mental impairment that substantially limit[ed] one or more [of her] major life activities."  42 U.S.C. § 12102(1)(A).  There is no question that, at relevant times, Wiseman suffered from arthritis and plantar fasciitis.  Defendant disputes whether those conditions substantially limited Wiseman from performing any major life activities.  (Mem. at 14 n.5; Reply at 7–9.)

For her part, Wiseman specifically contends that the arthritis in her knees interfered with the major life activity of working.  (Opp'n at 8–9.)  The ADA defines "major life activities" to include "working."  42 U.S.C. § 12102(2)(A).  "Where the 'major life activity' at issue is 'working,' the statutory phrase 'substantially limits' requires, at a minimum, that the plaintiff show that [she] is restricted from working in a broad class of jobs, or a broad range of jobs in various classes."  *Graves v. Mid South Waffles, Inc.*, 12 C 414, 2015 WL 998216, at *4 (M.D. Tenn. Mar. 6, 2015) (quoting *Morales v. BellSouth Telecomm., Inc.*, 08 C 32, 2009 WL 1322577, at *7 (M.D. Tenn. May 11, 2009)); *Cardenas-Meade v. Pfizer*, 510 F. App'x 367, 370 (6th Cir. 2013); *Sapp v. W. Exp., Inc.*, 13 C 512, 2014 WL 7357379, at *6 (M.D. Tenn. Dec. 12, 2014).  Even after the 2009 amendments to the ADA, if a plaintiff relies on "working" as the major life activity, she must prove "that the impairment substantially limits . . . her ability to perform a class of jobs or broad range of jobs in various classes as compared to most people having comparable training, skills, and abilities."  29 C.F.R. Part 1630, App. § 1630.2(j); *see also Carothers v. Cty. of Cook*, — F.3d —, 2015 WL 9268078, at *5 (7th Cir.

Dec. 21, 2015) (similarly interpreting the appendix to Part 1630); *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 835 (11th Cir. 2011) (concluding that, based on precedent, plaintiff was required to show, "even after the enactment of the ADAAA and the modified EEOC regulations, . . . that she was substantially limited in performing a class of jobs or broad range of jobs in various classes"). "[D]emonstrating a substantial limitation in performing the unique aspects of a single specific job is not sufficient to establish that a person is substantially limited in the major life activity of working." 29 C.F.R. Part 1630, App. § 1630.2(j); *Graves*, 2015 WL 998216, at *4; *Sapp*, 2014 WL 7357379, at *6.

Wiseman does not address this requirement in detail. (Opp'n at 8–9.) She states, in conclusory fashion, that her conditions interfered with her ability to work. (*Id.* at 9.) She has neither asserted, nor shown, that her conditions substantially limited "her ability to perform a class of jobs or broad range of jobs in various classes as compared to most people having comparable training, skills, and abilities." 29 C.F.R. Part 1630, App. § 1630.2(j). This omission is fatal to her claim.

Additionally, the evidence before us indicates that Wiseman was able to perform other jobs. As Defendant points out, Wiseman admits that she held another security officer position after her termination, which did not require extensive walking or climbing. (Resp. to SUMF ¶ 100.) Her conditions also improved, now that she no longer walks or climbs as was required when she worked for Defendant. (*Id.* ¶¶ 97–102.) She further acknowledges that she has walked a 5k and intends to continue training for such races. (*Id.* ¶ 102.) Based on the undisputed evidence, a reasonable jury *could* find that Wiseman was limited in performing her specific tasks for Defendant but *could not* conclude that she was limited in working a class of jobs or broad

range of jobs.  Because Wiseman has not raised a triable question of fact as to whether she was actually disabled under the ADA, we grant the motion as to this claim.

## 2. "Regarded as" Having an Impairment

Under the alternate "regarded-as" approach, Wiseman must show that she was subjected to an adverse employment action "because of an actual or perceived physical or mental impairment whether or not the impairment limit[ed] or [was] perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A); *see* 29 C.F.R. § 1630.2(g)(1)(iii), (g)(3).  Defendant does not claim that it did not perceive Wiseman as having an actual or perceived impairment.  (*See* Mem. at 17–18; Reply at 7.)  We therefore assume that Wiseman qualifies as "disabled" under the third, "regarded-as" prong of the definition.[9]  42 U.S.C. § 12102(1)(C), (3)(A).

Having thus satisfied the first element of her ADA direct-evidence prima facie case, Wiseman must next show that "she is otherwise qualified for the position."  *Kleiber*, 485 F.3d at 869; *see Banks*, 610 F. App'x 526–27; *Rorrer*, 743 F.3d at 1038–39; *see also* 29 C.F.R. § 1630.2(l)(3) ("Establishing that an individual is regarded as having such an impairment does not, by itself, establish liability.").  Defendant disputes Wiseman's qualification for the job, contending that she was not capable of performing her basic duties.  (Mem. at 17–18.)  Wiseman, on the other hand, repeatedly states that she was "otherwise qualified" for the security officer position, had she been reasonably accommodated by Defendant.  (Opp'n at 2, 9–12.)

The flaw in Wiseman's argument is that she was not entitled to any accommodation.  As the ADA and its regulations clarify, an employer "need not provide a reasonable accommodation . . . to an individual who meets the definition of disability in section 12102(1) of this title solely under subparagraph (C)"—the "regarded-as" prong.  42 U.S.C. § 12201(h); 29 C.F.R.

---

[9] We undertake this analysis out of an abundance of caution—and despite the fact that Wiseman did not defend this claim in her opposition to the motion, focusing instead on her actual disability claim.  (*See* Opp'n at 8–9.)

§ 1630.2(o)(4) (explaining that accommodations are required for disabled individuals with actual impairments or records thereof, but not for individuals "regarded as" disabled); *see Wurzel v. Whirlpool Corp.*, 482 F. App'x 1, 11 n.13 (6th Cir. 2012); *Workman*, 165 F.3d at 467. By extension, where a plaintiff brings a "regarded-as" claim, as here, she must demonstrate that she was "a qualified individual without the benefit of any reasonable accommodation." *Hoback v. City of Chattanooga*, 10 C 74, 2012 WL 3834828, at *5 (E.D. Tenn. Sept. 4, 2012); *Baker*, 414 F. App'x at 773–76 (reiterating that "a finding of 'regarded-as' disability would obviate an employer's responsibility to offer reasonable accommodation to an employee"). In other words, Wiseman must show that she could "perform the essential functions of the job as it is normally performed." *Hoback*, 2012 WL 3834828, at *5; *Wurzel*, 482 F. App'x at 11 n.13 ("The question of [her] qualification must be decided without regard to any potential accommodation."); *see also Baker*, 414 F. App'x at 773–76.

Pursuant to these authorities, we assess whether Wiseman was qualified to perform her job for Defendant, without any requested accommodations. The record unequivocally shows that Wiseman could not meet her essential job requirements without accommodation. Wiseman admitted that she could not perform the necessary roving or stair climbing without accommodation. (Resp. to SUMF ¶¶ 49–50; Wiseman Dep. at 123–25.) She testified that she could not accomplish these duties, to the extent required by the job, without accommodation. (Wiseman Dep. at 124–25.) She asserts that she was qualified for the position so long as Defendant provided her with a vehicle for roving duties and/or eliminated the stair-climbing requirement. (Opp'n at 11.) Yet at no time has Wiseman alleged or shown that she could perform all of her essential job duties without accommodation.[10] *See, e.g., Belasco v.*

---

[10] Wiseman has not disputed that the roving of the buildings and checking of stairwells are essential functions of the security officer position.

*Warrensville Heights City Sch. Dist.*, — F. App'x —, 2015 WL 8538096, at *7 (6th Cir. Dec. 11, 2015) (noting that the burden is on plaintiff "to bring forth evidence to create a genuine issue of material fact as to whether she was able to perform the essential functions of her job"). As a result, Wiseman was not a qualified individual for the position, and her "regarded-as" claim cannot stand.[11]

### b.  Reasonable Accommodation

Before moving to Wiseman's retaliation claim, we briefly address her claim for reasonable accommodation.  As previously mentioned, employers are not obligated to provide reasonable accommodations for individuals who are "regarded as" disabled, in the absence of any actual disabling impairment or record thereof.  42 U.S.C. § 12201(h); 29 C.F.R. § 1630.2(o)(4); *see Baker*, 414 F. App'x at 774–76; *Workman*, 165 F.3d at 46.  We have already determined that Defendant is entitled to summary judgment on Wiseman's ADA claims based on actual disability, because she has failed to prove that she has a physical impairment that substantially limits her ability to work.  Her reasonable accommodation claim must fall as well.

### D.  Wiseman's Disability Retaliation Claim

In addition to her discrimination claims, Wiseman asserts that Defendant retaliated against her in violation of the ADA.  (*See* Compl. ¶ 28.)  Wiseman alleges that Defendant retaliated against her because of her requests for accommodation.  (*Id.*)

### 1.  Implicit Abandonment of the Claim

As a preliminary matter, our ability to fully analyze this claim is hindered by Wiseman's failure to defend it.  In her opposition to the motion, Wiseman explicitly conceded her retaliation claims as based on age and gender.  (Opp'n at 1.)  Yet she makes no mention of the disability

---

[11] In light of our ruling, we need not evaluate whether Wiseman's requested accommodations were reasonable.

retaliation claim. She offers no substantive legal argument, and points to no evidentiary support, to contest the motion. We are inclined to construe Wiseman's silence as abandonment of her disability retaliation claim. *See, e.g.*, *Moore v. Weinstein Co., LLC*, 09 C 166, 2012 WL 1884758, at *28 (M.D. Tenn. May 23, 2012) (finding that plaintiff's silence "constitutes implicit abandonment"); *Burress v. City of Franklin, Tenn.*, 809 F. Supp. 2d 795, 809 (M.D. Tenn. 2011) (concluding that plaintiff no longer wished to pursue claims left unaddressed in response to a motion); *Gibson-Holmes v. Fifth Third Bank*, 661 F. Supp. 2d 905, 912 (M.D. Tenn. 2009) (deeming claims abandoned when plaintiff failed to respond); *Perry v. Hoeganaes Corp.*, 04 C 525, 2005 WL 1875090, at *5–6 (M.D. Tenn. Aug. 5, 2005) (finding abandonment of claims due to plaintiff's "own failure to defend them").

Nonetheless, we will consider the merits of the motion. As the Sixth Circuit has counseled, it remains the moving party's initial burden to show that it should prevail, even if its adversary fails to respond. *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991) ("In other words, a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded."); *see Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005); *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405–07 (6th Cir. 1992); *see also Birmingham-Jefferson Cty. Transit Auth. v. Boatright*, 09 C 304, 2009 WL 2601926, at *1 (M.D. Tenn. Aug. 20, 2009). While we must therefore "intelligently and carefully review the legitimacy of . . . an unresponded-to motion," we must also "refrain[] from actively pursuing advocacy or inventing the *riposte* for a silent party." *Guarino*, 980 F.2d at 407; *Briggs v. Univ. of Detroit-Mercy*, 611 F. App'x 865, 870–71 (6th Cir. 2015). We need not "*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party," *Guarino*, 980

F.2d at 410, nor are we required to advance legal arguments ignored by the non-movant, *Dice Corp. v. Bold Techs.*, 556 F. App'x 378, 384 (6th Cir. 2014).

### 2.    Merits of the Motion

We focus then on disability retaliation claim.  The ADA prohibits an employer from discriminating against an employee because she "opposed any act or practice made unlawful by this chapter" or because she "made a charge, testified, assisted, or participated in any manner in an investigation" under the statute.  42 U.S.C. § 12203.

Wiseman has not identified any direct evidence of retaliation, so we assume she proceeds under the burden-shifting *McDonnell Douglas* approach.  That framework requires Wiseman to make a prima facie showing that: (1) she "engaged in protected activity;" (2) Defendant knew about it; (3) Defendant took adverse action against her; and (4) "there was a causal connection between the protected activity and the adverse action."  *A.C. ex rel J.C. v. Shelby Cty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013); *EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015); *Bryson v. Regis Corp.*, 498 F.3d 561, 577 (6th Cir. 2007); *Saley v. Caney Fork, LLC*, 886 F. Supp. 2d 837, 855–56 (M.D. Tenn. 2012).  If Wiseman establishes a prima facie case, Defendant then bears the "burden of production to articulate a nondiscriminatory reason for its action."  *Ford Motor Co.*, 782 F.3d at 767; *A.C. ex rel J.C.*, 711 F.3d at 697; *Saley*, 886 F. Supp. 2d at 855.  If Defendant does so, the burden swings back to Wiseman to prove that Defendant's proffered explanation is pretext for retaliation.  *Ford Motor Co.*, 782 F.3d at 767; *A.C. ex rel J.C.*, 711 F.3d at 697; *Saley*, 886 F. Supp. 2d at 855–56.

### a.    Protected Activity and Adverse Action

Defendant contends that Wiseman did not engage in any protected activity.  In her deposition, Wiseman testified about numerous complaints she made to Defendant's employees,

concerning various topics, such as her uniform, the length of bereavement leave, a disciplinary incident, and her schedule. (Mem. at 19; SUMF ¶ 103; Wiseman Dep. at 195–201, 203–09.) We agree with Defendant that these complaints, as set forth in the record, do not constitute "protected activity" because they do not concern Wiseman's alleged disability, her requests for accommodation, or her opposition to "any act or practice made unlawful by" the ADA. 42 U.S.C. § 12203; *see Collins v. Memphis Goodwill Indus., Inc.*, 489 F. App'x 901, 910 (6th Cir. 2012) ("Because the email did not reference any alleged act of sex discrimination or sexual harassment, it did not amount to protected activity."); *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591–92 (6th Cir. 2007) (stating that an employee does not engage in protected activity when making a "vague charge of discrimination"); *see also Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1312–14 (6th Cir. 1989). Wiseman has not argued to the contrary.

That being said, it is well-established that an employee's good-faith request for a reasonable accommodation constitutes protected activity, even if the plaintiff cannot show he or she is "disabled" within the meaning of the ADA. *A.C. ex rel J.C.*, 711 F.3d at 698; *Baker*, 414 F. App'x at 776–77 & n.8; *Bryson*, 498 F.3d at 577; *Saley*, 886 F. Supp. 2d at 856. Here, Wiseman alleged in the complaint that she felt retaliated against because of her requests for accommodation. (Compl. ¶ 28.) It is undisputed and obvious from the record that she sought accommodations and submitted requests for light duty over the course of her employment. Although Wiseman has not addressed this point, we find she has satisfied this first element of the retaliation claim.

Additionally, there is no question that Defendant was aware of Wiseman's accommodation requests and that her termination was an adverse action. Thus, the second and third elements are met.

### b. Causal Connection

For the fourth element, causation, a plaintiff "must produce 'sufficient evidence from which an inference could be drawn that the adverse action would not have been taken' had [she] not engaged in the protected activity." *Saley*, 886 F. Supp. 2d at 856 (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)); *Ford Motor Co.*, 782 F.3d at 770; *A.C. ex rel J.C.*, 711 F.3d at 699. In other words, to withstand summary judgment, Wiseman's evidence must warrant an "inference that [her] protected activity was the likely reason for the adverse action." *Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 571 (6th Cir. 2009) (internal quotation omitted); *Ford Motor Co.*, 782 F.3d at 770; *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990). This burden is not onerous, and "[c]ausation can be inferred from indirect or circumstantial evidence, including evidence that the defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights." *Simpson*, 359 F. App'x at 571 (internal quotation omitted); *A.C. ex rel J.C.*, 711 F.3d at 699; *Nguyen*, 229 F.3d at 563; *see also Troxler v. MAPCO Exp., Inc.*, 11 C 890, 2012 WL 4484939, at *10–12 (M.D. Tenn. Sept. 27, 2012).

Here, Wiseman has not identified any causal connection between her requests for accommodation and her termination. She has not directed us to evidence in the record to support an inference of causation. Relatedly, the record does not include evidence of any similarly-situated employees who did not seek accommodation and were treated more favorable. Rule 56 places the burden on Wiseman "to do [her] own work, and to assist [us] by responding to the motion, pointing out as specifically as is reasonably possible facts that might demonstrate the existence of genuine issues." *Guarino*, 980 F.2d at 406. She has neglected to do so and has failed to make out her prima facie case.

### c.    Nondiscriminatory Rationale and Pretext

Even if we assume that Wiseman established her prima facie case,[12] Defendant has

provided a legitimate non-retaliatory reason for its decision to terminate her.  Defendant offered

the declaration of Erin Hampton, its Vice President of Human Resources, who was involved in

the decision.  (Hampton Decl. ¶ 12.)  Hampton stated that she made the termination decision

with Defendant's CEO, Charles Starks.  (*Id.*)  Hampton declared that Defendant terminated

Wiseman "because she had been unable to perform all the essential functions of her job since

nearly the beginning of her employment."  (*Id.* ¶ 14.)  According to Hampton, Defendant was

willing to modify Wiseman's job functions temporarily—by eliminating or limiting certain

essential functions, requiring other officers to complete them—but it could not do so

permanently.  (*Id.*)  Hampton explained that Defendant fired Wiseman "based on her inability to

perform the essential functions of her job, with or without a reasonable accommodation."  (*Id.*)

This rationale is corroborated by the termination letter given to Wiseman, as well as the

explanation provided Wiseman by Starks when she met with him following her termination.

(9/9/13 Hampton Ltr. to Wiseman; Wiseman Dep. at 83, 85; SUMF ¶ 48.)

In light of Defendant's explanation, the burden shifts back to Wiseman to demonstrate

pretext.  *Ford Motor Co.*, 782 F.3d at 767; *A.C. ex rel J.C.*, 711 F.3d at 697; *Saley*,

886 F. Supp. 2d at 855–56.  Wiseman may do so by showing that Defendant's stated reason:

"(1) lack[s] a basis in fact, (2) did not actually motivate [her termination], or (3) [was]

---

[12] Wiseman, for example, could have contended that the timing of her termination, just a few
days after her third request for light duty, was sufficient to raise an inference of causation.  But
she did not raise this argument, and we decline to do so on her behalf.  Furthermore, we need not
address whether temporal proximity alone would be sufficient to satisfy the causation element
under all of the facts present here.  *Compare Nguyen*, 229 F.3d at 566 (noting that temporal
proximity alone is typically not enough to prove causation without other evidence), *with Mickey
v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (holding that timing may suffice
if the adverse action "occurs very close in time after an employer learns of a protected activity").

insufficient to motivate [her termination]." *A.C. ex rel J.C.*, 711 F.3d at 702; *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994); *Saley*, 886 F. Supp. 2d at 855–56; *Burress*, 809 F. Supp. 2d at 814–15.  In short, Wiseman "must show *both* that [Defendant's] preferred reason was not the real reason for its action, *and* that [Defendant's] real reason was unlawful." *Ford Motor Co.*, 782 F.3d at 767 (italics in original); *Simpson*, 359 F. App'x at 570; *Bryson*, 498 F.3d at 572; *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752 (1993).

Wiseman has not raised a triable question of fact as to pretext.  She has shown neither that Defendant's explanation was "not the real reason," nor that its "real reason was unlawful." *Ford Motor Co.*, 782 F.3d at 767.  Wiseman has not identified any evidence that could undermine Defendant's rationale or support an inference that the termination decision was motivated by her requests for accommodation.  To the contrary, the record indicates that Defendant granted her first two requests for accommodation, letting her go only after it determined that she was actually and indefinitely unqualified for the position.  No reasonable jury could conclude, under these circumstances, that Defendant's rationale was disingenuous and that its true purpose was retaliation.  *See, e.g.*, *Ford Motor Co.*, 782 F.3d at 770 ("No reasonable jury could find that Ford . . . would continue to pay an employee . . . who, by her own admission, could not perform the essential elements of her job in the future.").

**CONCLUSION**

For the reasons discussed in detail above, we grant Defendant's motion for summary judgment in its entirety.  This case is terminated.  It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: January 5, 2016
        Chicago, Illinois